# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JAMES EDWARD BARBER,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| v. | ) Case No. 5:16-cv-00473-RDP |
| | ) |
| **JEFFERSON S. DUNN,** | ) |
| **Commissioner, Alabama Department** | ) |
| **of Corrections,** | ) |
| | ) |
| **Respondent.** | ) |

## **MEMORANDUM OPINION**

This matter is before the court on Petitioner James Edward Barber's Motion to Alter or Amend Judgment. (Doc. # 26). The motion has been fully briefed. (Docs. # 26-1, 28, 31). For the reasons explained below, the motion is due to be denied.

**I.     Background**

Some fifteen years ago, Barber was convicted and sentenced to death for the murder of Dorothy Epps during a first-degree robbery. (Doc. # 24 at 6-7). The evidence at trial, including Barber's own videotaped confession, showed that he beat his 75-year-old victim to death with his fist and a claw hammer. (*Id.*); *Barber v. State*, 952 So. 2d 393, 400-06 (Ala. Crim. App. 2005). After unsuccessfully challenging his conviction and sentence on direct appeal and in state postconviction proceedings, Barber filed a federal habeas petition pursuant to 28 U.S.C. § 2254. (Doc. # 1). This court determined that Barber was not entitled to relief under § 2254 and therefore denied his petition. (Docs. # 24, 25). It also ruled that Barber was not entitled to a certificate of appealability on any of his claims. (Doc. # 25). Pursuant to Federal Rule of Civil Procedure 59(e), Barber has now moved the court to alter or amend its judgment. (Doc. # 26).

## II. Legal Standard

A Rule 59(e) motion to alter or amend a judgment is an extraordinary measure. Such a motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks omitted). Instead, "the *only* grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) (emphasis added) (brackets and internal quotation marks omitted). Because Barber's motion is not based on newly-discovered evidence, the only basis for granting it would be a manifest error of law or fact. A "manifest error" is not just any error but one "that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Error*, Black's Law Dictionary (10th ed. 2014).

Because Barber must show that the court made manifest errors of law or fact in denying his § 2254 habeas petition, his burden is especially high. That is so because, under § 2254(d)(1), federal habeas relief is precluded if "fairminded jurists could disagree" about the correctness of the state court's decision to deny Barber relief. *Harrington v. Richter*, 562 U.S. 86, 101-02 (2011). As the Supreme Court has repeatedly explained, to obtain federal habeas relief, a habeas petitioner must show that the state court's adjudication of his claims was not merely "incorrect or erroneous" but "objectively unreasonable"—such that no fairminded jurist could agree with the state court's disposition of his claims under clearly established Supreme Court precedent. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *see also Harrington*, 562 U.S. at 101-02. Thus, to succeed on his Rule 59(e) motion, Barber must show that this court completely disregarded controlling law or credible record evidence in concluding that the state court's adjudication of

2

Barber's claims did not transgress § 2254's highly deferential standard of review. That is a high burden indeed, and one that Barber has not come close to carrying.

**III.     Analysis**

Barber's Rule 59(e) motion claims the court committed manifest errors of law and fact when it (1) denied Barber's penalty-phase *Strickland* claim; (2) denied Barber's guilt-phase *Strickland* claim; and (3) declined to issue a certificate of appealability for three of his claims. Much of Barber's Rule 59(e) motion merely attempts to relitigate already-decided issues or to raise arguments that he already made prior to the entry of judgment. The court first identifies those arguments and issues, as it will not address them further beyond what it has already said in its 108-page memorandum opinion denying habeas relief. As to the remaining issues that Barber arguably has not previously raised, the court briefly explains why Barber has failed to identify any error of law or fact by the court, much less a "manifest" error.

**A.     Arguments Improperly Raised in a Rule 59(e) Motion**

Many of Barber's arguments cannot properly be raised in a Rule 59(e) motion because they are merely attempts to relitigate old matters or to raise arguments Barber could have made (and in fact did make) before the entry of judgment. The court here identifies those arguments and refers Barber to the portions of its memorandum opinion addressing those arguments.

As to his guilt-phase *Strickland* claim, Barber first argues that the state court unreasonably concluded that his trial counsel's performance was not constitutionally deficient. (Doc. # 26-1 at 18-24). He argues specifically that (1) trial counsel failed to adequately investigate and discuss with Barber alternative defenses to innocence, including the manslaughter and mere afterthought defenses; (2) trial counsel's failure to investigate and discuss those defenses with Barber was objectively unreasonable; (3) trial counsel's decision (at

3

his insistence) to pursue an innocence defense at trial was objectively unreasonable; and (4) the state court's rejection of his claim was an objectively unreasonable application of clearly established Supreme Court precedent. (*Id.*). But Barber previously made each of these same arguments in his habeas petition and reply brief. (Docs. # 1 at 29-53; 23 at 20-35). And the court considered and rejected these arguments in its memorandum opinion. (Doc. # 24 at 13-17, 24-34). The court will not consider them further here.

Barber also argues that he was prejudiced by his trial counsel's allegedly deficient performance at the guilt phase of his trial. (Doc. # 26-1 at 25-27). He argues specifically that (1) had trial counsel adequately investigated alternative defenses to innocence and discussed those defenses with him, he would have allowed his trial counsel to pursue those alternative defenses at trial rather than the innocence defense; and (2) the evidence presented at his Rule 32 hearing established the mere afterthought and manslaughter defenses, which, if presented at trial, would have created a reasonable probability of a noncapital conviction. (*Id.*). But Barber previously made these same arguments in his habeas petition and reply brief. (Docs. # 1 at 53-78; 23 at 36-45). And the court considered and rejected these arguments in its memorandum opinion. (Doc. # 24 at 18-20, 34-36). The court will not consider them further here.

### B. Barber Has Failed to Identify Any Manifest Errors of Law or Fact

Barber makes three arguments in his Rule 59(e) motion that he has not already presented to the court: (1) this court manifestly erred in evaluating Barber's penalty-phase *Strickland* claim; (2) this court manifestly erred by relying on *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018) in denying Barber's guilt-phase *Strickland* claim; and (3) this court manifestly erred by declining to issue a certificate of appealability for three of Barber's claims. Though the court is not obligated on a Rule 59(e) motion to consider arguments that could have been raised prior to the

4

entry of judgment but were not, it will nonetheless do so here out of an abundance of caution.

### 1. The Court's Denial of Barber's Penalty-Phase *Strickland* Claim

The state court that adjudicated Barber's penalty-phase *Strickland* claim concluded that Barber failed to show he was prejudiced by his counsel's performance. (Doc. # 24 at 47). In denying habeas relief, this court held that the state court's conclusion was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. (*Id.*). But Barber now argues the court committed a manifest error of law in holding that the state court's ruling was not unreasonable under § 2254 by failing to adequately consider *all* of the mitigation evidence presented at his Rule 32 hearing. (Doc. # 26-1 at 9-16). In particular, Barber faults the court for failing to adequately consider all of the testimony offered by Barber's Rule 32 hearing experts, Dr. Alexander Morton and Dr. Karen Salekin. (Docs. # 26-1 at 10-12; 31 at 7-9).[1] Barber's arguments are meritless.

First, Barber did not even rely upon Dr. Morton's Rule 32 hearing testimony in either his habeas petition or reply brief for the purpose of establishing the prejudice component of his penalty-phase *Strickland* claim. (Docs. # 1 at 99-119; 23 at 69-75). Indeed, Dr. Morton's name appears just two times (both in footnotes) in the portions of Barber's habeas petition and reply brief that address the prejudice component of his penalty-phase *Strickland* claim. (Docs. # 1 at 119 n.9; 23 at 73 n.10). And in neither instance did Barber's counsel actually cite portions of the record containing testimony *by* Dr. Morton. (*Id.*). Barber cannot now claim that it was "manifest error" for the court to decline to address in its memorandum opinion testimony that he did not even rely

---

[1] Barber's counsel initially made the following assertion: "The Court makes no reference to *any* of Dr. Salekin's or Dr. Morton's testimony in its 108-page opinion." (Doc. # 26-1 at 12) (emphasis in original). As the state later pointed out (Doc. # 28 at 4-6), that statement by Barber's counsel is patently false. The court considered both Dr. Salekin's and Dr. Morton's testimony at various points in its memorandum opinion. (Doc. # 24 at 19, 52, 56).

upon to support the prejudice component of his penalty-phase *Strickland* claim.

As to Dr. Salekin, the primary import of her testimony was that she uncovered three categories of mitigation evidence that trial counsel's allegedly unreasonable mitigation investigation failed to uncover: (1) evidence of Barber's personal and family history of mental illness; (2) evidence that Barber had destructive role models during his childhood; and (3) evidence that Barber lacked parental discipline during his childhood. Indeed, these three categories of mitigation evidence stemming from Dr. Salekin's investigation were the primary sources of prejudice Barber identified in his habeas petition (Doc. # 1 at 110-19) and reply brief (Doc. # 23 at 70-74), and they are the primary aspects of Dr. Salekin's testimony that Barber relies on his Rule 59(e) motion (Doc. # 26-1 at 11-14).[2]

Because Barber's prejudice argument was (and is) framed primarily in terms of those three categories of new mitigation evidence, the court thoroughly considered each of those categories of mitigation evidence in its memorandum opinion denying habeas relief. (Doc. # 24 at 40-41, 51-53). Barber seems to complain that the court did not explicitly reference the fact that, in addition to the original source witnesses that Dr. Salekin's investigation uncovered, Dr. Salekin herself also testified regarding these three categories of mitigation evidence. But the fact that the court did not explicitly reference Dr. Salekin's testimony when weighing the three

---

[2] Indeed, Barber's Rule 59(e) motion references these three categories of mitigation evidence no less than three times. *See* (Doc. # 26-1 at 11) ("Dr. Salekin's investigation uncovered numerous mitigating circumstances that were available (and either not investigated or not presented) at the time of Mr. Barber's trial, including Mr. Barber's personal and familial history of depression and mental illness, the effects of negative role models on Mr. Barber's development, and the absence of adequate parenting during Mr. Barber's childhood."); (*Id.* at 12) (referencing (1) Barber's "personal and family history of substance abuse and mental illness"; (2) the "negative impact that Mr. Barber's family and community played in his life . . . at a very young age"; and (3) the fact that "Mr. Barber's parents lacked involvement and nurturance in his life; provided inconsistent or nonexistent discipline; failed to provide appropriate supervision; and neglected to discuss moral norms or consequences"); (*Id.* at 14) (referencing Barber's trial mitigation expert's failure to uncover "evidence of Mr. Barber's (1) personal or family history of mental illness, (2) poor role models, or (3) poor parenting").

6

categories of mitigation evidence she and other witnesses testified to, instead choosing to rely primarily on the original source witnesses upon which Dr. Salekin's own testimony was based, was not legal error, let alone "manifest error." And, in any event, even considering the portions of Dr. Salekin's testimony that are not cumulative of the testimony given by other fact witnesses, that testimony is not sufficient to render the state court's conclusion that Barber failed to show prejudice contrary to or an unreasonable application of clearly established Supreme Court precedent.

Barber also takes issue with the court's reliance on the Supreme Court's precedents concerning penalty-phase prejudice. (Doc. # 26-1 at 15). According to Barber, the fact that the Supreme Court has only ever found penalty-phase prejudice in cases where the habeas petitioner introduced far more graphic and compelling mitigation evidence than Barber has introduced in this case is "simply not a relevant factor in the prejudice analysis." (*Id.*). Instead, Barber claims this court was simply required to determine "whether there is a reasonable probability that if the jury had heard the totality of the mitigation evidence presented during the Rule 32 hearing, Mr. Barber would not have been sentenced to death." (*Id.*).

The arguments made by Barber's counsel suggest that they badly misunderstand the relevant legal standard Barber must satisfy to obtain habeas relief. (And, to be clear, that is the most charitable inference the court can draw in light of their arguments.) It is not enough for this court to conclude that, were it deciding the issue de novo, Barber's postconviction mitigation evidence (if presented at trial) would have created a reasonable probability of a different outcome. Instead, to grant § 2254 relief, this court must conclude that the state court so misapplied existing Supreme Court precedent regarding penalty-phase prejudice that no fairminded jurist could agree with the state court's conclusion that Barber failed to establish

7

prejudice. For the reasons explained in its memorandum opinion (Doc. # 24 at 53-57), the court cannot so hold, and habeas relief is therefore precluded.

### 2. The Court's Reliance on *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018)

Barber has two objections to the court's reliance on *McCoy v. Louisiana* in rejecting his guilt-phase *Strickland* claim. (Doc. # 24 at 31-34). One is factual, and one is legal, but both are wrong.

Barber first attempts to factually distinguish his case from *McCoy*. In *McCoy*, Barber contends, the defendant "insisted on pursuing an innocence defense even after trial counsel informed him that his only viable strategy was to admit the killings and to concentrate on attempting to avoid a sentence of death." (Doc. # 31 at 12). But in his case, Barber asserts, trial counsel had no such discussion with him. (*Id.*).

This supposed factual distinction is specious. Indeed, it is belied by the record evidence the court referenced in its memorandum opinion (and which Barber's counsel does not contest or even mention in their briefing on Barber's Rule 59(e) motion). That record evidence shows that Barber's trial counsel repeatedly asked Barber to consider alternative defenses besides telling the jury "you're not guilty," but that Barber "flatly refused to even discuss that with [trial counsel]." (Doc. # 24 at 33); *see also* (*id.* at 26-30, 33 & n.4) (referencing extensive testimony showing that Barber's trial counsel repeatedly discussed alternative defenses to innocence with Barber, but that Barber steadfastly refused to permit counsel to present anything besides an absolute innocence defense at trial).

Barber next argues it was improper for the court to consider *McCoy* in denying habeas relief because *McCoy* had not been decided at the time the Alabama Court of Criminal Appeals rendered its decision rejecting Barber's claim. (Doc. # 31 at 13). Barber's argument appears to

rest on two premises. First, because *McCoy* had not been decided at the time of Barber's trial, the Sixth Amendment did not at that time require Barber's counsel to honor his request not to admit to killing Epps. And second, more than simply *permitting* counsel to disregard Barber's express instructions not to admit guilt, the Sixth Amendment (as interpreted in *Strickland*) actually *required* Barber's counsel to ignore his sustained insistence that counsel pursue an innocence defense at trial and instead admit that Barber killed Epps in an attempt to save his life. Both premises of Barber's argument are flawed.

First, as one of our Circuit Judges has recently explained, it is not strictly speaking true that the Sixth Amendment did not require Barber's counsel to refrain from admitting his guilt at his 2003 trial. *See Lester v. United States*, No. 18-10523, 2019 WL 1896580, at *6-8 (11th Cir. Apr. 29, 2019) (statement of William Pryor, J., respecting the denial of rehearing en banc). It is of course true that *McCoy*, the judicial decision which held that the Sixth Amendment requires capital defense lawyers to refrain from admitting their client's guilt if the client so insists, had not been decided in 2003. But, as Judge William Pryor recently reminded us, there is a critical difference "between a change in judicial *doctrine* and a change in *law*." *Id.* at *6 (emphasis added). Without distinguishing "between judges' understanding of the law and the law itself," the Supreme Court could not "meaningfully describe a past decision of its own as 'wrong the day it was decided.'" *Id.* (quoting *Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 863 (1992) (joint opinion of O'Connor, Kennedy, and Souter, JJ.)). And because the Supreme Court lacks the power to amend the Constitution (a written instrument which "means now" "that which it meant when adopted"), *McCoy* (which interpreted the Sixth Amendment) can only mean that the Sixth Amendment has *always* forbidden capital defense counsel to admit their client's guilt over the client's express objection. *Id.* (internal quotation marks omitted).

9

The Sixth Amendment's meaning has not changed between the time of Barber's trial in 2003 and the time *McCoy* was handed down in 2018. Thus, if it is true that the Sixth Amendment requires capital defense lawyers to refrain from admitting their client's guilt if the client so insists (and *McCoy* held that to be true), then it would have violated the Sixth Amendment in 2003 for Barber's counsel to admit (over his express objection) that Barber killed Epps, no less than it would today. And if it would have violated the Sixth Amendment for trial counsel to admit Barber's guilt in 2003, then it cannot also be the case (as Barber now argues) that the Sixth Amendment *required* Barber's counsel to admit his guilt in 2003 over Barber's express objection. Simply put, Barber's counsel cannot have been constitutionally ineffective for adhering to the Constitution.

Second, even if one does not accept the sensible distinction between judicial interpretations of the law and the law itself, it does not follow that *McCoy* is of no value in assessing both the reasonableness of counsel's conduct at Barber's trial in 2003 and the reasonableness of the state court's decision holding that counsel's conduct was reasonable—which are the decisive questions in a *Strickland* inquiry governed by § 2254(d). *See Harrington*, 562 U.S. at 105. Assume for a moment a legal world where it were somehow true that, pre-*McCoy*, the Sixth Amendment permitted capital defense lawyers to admit their client's guilt over the client's objection. Even if the pre-*McCoy* Sixth Amendment *permitted* this conduct by defense lawyers, it still seems unlikely the Amendment would have *required* the very conduct it now forbids. At the very least, there is a reasonable argument that the pre-*McCoy* Sixth Amendment (as interpreted in *Strickland*) "did not require Barber's counsel to do [in 2003] what *McCoy* now forbids." (Doc. # 24 at 34). And that is all that is required under § 2254 to sustain the state court's ruling that Barber failed to establish his counsel's deficient performance at the
10

guilt-phase of his trial. *See Harrington*, 562 U.S. at 105 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

### 3. The Court's Failure to Issue a Certificate of Appealability

Finally, Barber contends the court completely disregarded controlling law by failing to issue a certificate of appealability for three of his claims: (1) his penalty-phase *Strickland* claim, (2) his guilt-phase *Strickland* claim, and (3) his *Ring v. Arizona* claim. (Doc. # 26-1 at 27-32). But far from completely disregarding controlling law, the court rested its decision to deny Barber a certificate of appealability on the very legal same legal principles that Barber identifies in his Rule 59(e) motion. (*Compare* Doc. # 25 at 1, *with* Doc. # 26-1 at 27-28). As the court previously explained (Doc. # 25 at 1), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Neither of those standards is satisfied here. Therefore, the court correctly declined to issue a certificate of appealability.

## IV. Conclusion

The Supreme Court has recently reiterated that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (internal quotation marks omitted). Barber has successfully avoided execution of his lawfully imposed sentence for some fifteen years. Rule 59(e) motions that largely attempt to relitigate issues already resolved in a thorough judicial opinion, or that make

11

specious claims of "manifest error" where none exists, merely "interpose unjustified delay" and frustrate courts' attempts to resolve collateral attacks on lawfully issued sentences "fairly and expeditiously." *Id.* at 1134. Barber's Rule 59(e) motion is meritless and is due to be denied. An order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this May 3, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE